# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

UNITED STATES OF AMERICA,

               *Plaintiff*,

       v.

FLAKEBOARD AMERICA LIMITED,

CELULOSA ARAUCO Y CONSTITUCIÓN, S.A.,

INVERSIONES ANGELINI Y COMPAÑÍA LIMITADA,

and

SIERRAPINE,

               *Defendants*.

Case No. 3:14-cv-04949-VC

**FINAL JUDGMENT**

WHEREAS, Plaintiff, United States of America, filed its Complaint on November 7, 2014, alleging that Defendants violated Section 7A of the Clayton Act, 15 U.S.C. § 18a, and that Flakeboard America Limited, Celulosa Arauco y Constitución, S.A., and SierraPine violated Section 1 of the Sherman Act, 15 U.S.C. § 1, and without this Final Judgment constituting any evidence against or admission by any party regarding any issue of fact or law;

AND WHEREAS, Defendants, without admitting any wrongdoing, agree to be bound by the provisions of this Final Judgment pending its approval by the Court;

AND WHEREAS, Defendants have represented to the United States that the actions and conduct restrictions required below can and will be made and that Defendants will later raise no

FINAL JUDGMENT—Page 2
Case No. 3:14-cv-04949-VC

claim of hardship or difficulty as grounds for asking the Court to modify any of the provisions contained below;

NOW THEREFORE, before any testimony is taken, and without trial or adjudication of any issue of fact or law, and upon the consent of the parties, it is ORDERED, ADJUDGED, AND DECREED:

## I.    JURISDICTION

This Court has jurisdiction over the subject matter of and each of the parties to this action.  The Complaint states claims upon which relief may be granted against Flakeboard, Arauco, and SierraPine under Section 1 of the Sherman Act, 15 U.S.C. § 1, and against all Defendants under Section 7A of the Clayton Act, 15 U.S.C. § 18a.

## II.    DEFINITIONS

A.    "Arauco" means Defendant Celulosa Arauco y Constitución, S.A., a Chilean company; its successors and assigns; and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

B.    "Agreement" means any contract, agreement, or understanding, formal or informal, written or unwritten.

C.    "Competing Product" means any product that any Defendant offers for sale in the United States that is primarily used for the same purpose as any product that any other party to a proposed Transaction with any Defendant offers for sale in the United States.

D.    "Defendants" mean Flakeboard America Limited, Celulosa Arauco y Constitución, S.A., the Ultimate Parent Entity, and SierraPine.

E.    "Flakeboard" means Defendant Flakeboard America Limited, a Delaware corporation with its headquarters in Fort Mill, South Carolina; its successors and assigns; and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

F.      "SierraPine" means Defendant SierraPine, a California limited partnership with its headquarters in Roseville, California; its successors and assigns; and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

G.      "Negotiation and Interim Period" means the period between the commencement of negotiations with respect to an offer to enter into a Transaction, and the date when negotiations are abandoned or when any resulting Transaction is consummated or abandoned.

H.      "Person" means any individual, partnership, firm, corporation, association, or other legal or business entity.

I.      "Production Facility" means any mill, plant, or other asset that manufactures products.

J.      "Transaction" means any Agreement to acquire any voting securities, assets, or non-corporate interests, form a joint venture, settle litigation, or license intellectual property with any person offering a Competing Product.

K.      "Ultimate Parent Entity" means Defendant Inversiones Angelini y Compañía Limitada, a holding company with its headquarters in Santiago, Chile, and its successors and assigns.

## III.    APPLICABILITY

This Final Judgment applies to Flakeboard, Arauco, the Ultimate Parent Entity, and SierraPine as defined above, and all other persons in active concert or participation with any of them who receive actual notice of this Final Judgment by personal service or otherwise.  This Court orders the relief in Section IV of this Final Judgment under Section 7A of the Clayton Act, 15 U.S.C. § 18a.  All other relief in this Final Judgment is to remedy the violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

## IV.    CIVIL PENALTY UNDER SECTION 7A OF THE CLAYTON ACT

Within 30 days of the entry of this Final Judgment, Flakeboard, Arauco, and the Ultimate Parent Entity must pay $1.9 million to the United States, and within 60 days of the entry of this Final Judgment, SierraPine must pay $1.9 million to the United States, for a total of $3.8 million.

## V.    DISGORGEMENT TO REMEDY THE VIOLATION
## OF SECTION 1 OF THE SHERMAN ACT

Within 30 days of the entry of this Final Judgment, Flakeboard must pay $1.15 million in disgorgement to the United States.

## VI.    PAYMENT OF CIVIL PENALTY AND DISGORGEMENT

A.    The payments specified in this Final Judgment must be made by wire transfer. Before making any transfers a Defendant must contact Janie Ingalls of the Antitrust Division's Antitrust Documents Group, at (202) 514-2481, for wire-transfer instructions.

B.    In the event of a default in payment, interest at the rate of 18 percent per annum will accrue thereon from the date of default to the date of payment.

## VII.    PROHIBITED CONDUCT

A.    Flakeboard, Arauco, and SierraPine may not enter into, maintain, or enforce any Agreement with an acquiring or to-be-acquired Person that, during the Negotiation and Interim Period of a Transaction:

   1.    fixes, raises, sets, stabilizes, or otherwise establishes price or output for any Competing Product;

   2.    moves, migrates, or otherwise allocates customers for any Competing Product;

   3.    discloses or seeks the disclosure of information about customers, prices, or output for any Competing Product, except as such disclosures may be permitted in subsection VIII.C or to the extent that such information is publicly available at the time disclosure occurs; or

4.     closes a Production Facility that produces a Competing Product without prior written notice to and written approval from the United States.

## VIII.     PERMITTED CONDUCT

Nothing in this Final Judgment prohibits Defendants from:

A.     entering into an Agreement that a party to a Transaction must continue operating in the ordinary course of business;

B.     entering into an Agreement that a party to a Transaction forego conduct that would cause a material adverse change in the value of to-be-acquired assets;

C.     before closing or abandoning a Transaction, conducting or participating in reasonable and customary due diligence, though no disclosure covered by this section is permitted unless (1) the information is reasonably related to a party's understanding of future earnings and prospects; and (2) the disclosure occurs under a non-disclosure agreement that (a) limits use of the information to conducting due diligence and (b) prohibits disclosure of the information to any employee of the Person receiving the information who is directly responsible for the marketing, pricing, or sales of the Competing Products;

D.     disclosing confidential business information related to Competing Products, subject to a protective order, in the context of litigation or settlement discussions; or

E.     entering into an Agreement where either one of the Defendants and the other party to the Transaction are or would be in a buyer/seller relationship and the Agreement would be lawful in the absence of the planned acquisition.

## IX.     ANTITRUST COMPLIANCE PROGRAM

A.     Flakeboard and SierraPine must each maintain an antitrust compliance program that designates, within 30 days of entry of this order, an Antitrust Compliance Officer with responsibility for achieving compliance with this Final Judgment.  The Antitrust Compliance Officer must, on a continuing basis, supervise the review of current and proposed activities to

ensure compliance with this Final Judgment.  The Antitrust Compliance Officer must also do the following:

1.   Distribute within 45 days of entry of this Final Judgment, a copy of this Final Judgment to each current officer and director, all sales managers and supervisors, and each employee, agent, or other person who, in each case, has responsibility for or authority over mergers and acquisitions; and for Flakeboard's Antitrust Compliance Officer, a copy of this Final Judgment to each current officer and director of Arauco;

2.   distribute in a timely manner a copy of this Final Judgment to any officer, director, employee, or agent who succeeds to a position described in Section IX.A.1;

3.   obtain within 60 days from the entry of this Final Judgment, and annually thereafter, and retain for the duration of this Final Judgment, a written certification from each person designated in Sections IX.A.1 & 2 that he or she (a) has received, read, understands, and agrees to abide by the terms of this Final Judgment; (b) understands that failure to comply with this Final Judgment may result in conviction for criminal contempt of court; and (c) is not aware of any violation of the Final Judgment; and

4.   provide a copy of this Final Judgment to each potential partner to a merger or acquisition before the initial exchange of a letter of intent, definitive agreement, or other agreement of merger.

B.   Within 60 days of entry Flakeboard and SierraPine must each certify to Plaintiff that it has (1) designated an Antitrust Compliance Officer, specifying his or her name, business address, and telephone number; and (2) distributed the Final Judgment in accordance with Section IX.A.1.

C.     For the term of this Final Judgment, on or before its anniversary date, Flakeboard and SierraPine must each file with Plaintiff an annual statement as to the fact and manner of its compliance with the provisions of Sections VII and IX.

D.     Within 45 days of entry of this Final Judgment, Arauco must distribute a copy of this Final Judgment to each current officer and director, sales manager and supervisor, and employee, agent, or other person who, in each case, has responsibility for any business in the United States.

E.     If any director, officer, or Antitrust Compliance Officer of any of the Defendants learns of a violation of this Final Judgment, that Defendant must within three business days take appropriate action to terminate or modify the activity so as to assure compliance with this Final Judgment, and must notify the Plaintiff of the violation within 10 business days.

## X.     RIGHT TO INSPECTION

A.     For the purpose of determining or securing compliance with this Final Judgment, any related orders, or determining whether the Final Judgment should be modified or vacated, and subject to any legally recognized privilege, authorized representatives of the United States Department of Justice, including consultants and other persons retained by the United States, shall, upon written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, and on reasonable notice to the Defendants, be permitted:

1.     access during Defendants' office hours to inspect and copy or at Plaintiff's option, to require Defendants to provide hard copy or electronic copies of, all books, ledgers, accounts, records, data, and documents in the possession, custody, or control of Defendants, relating to any matters contained in this Final Judgment; and

2.     to interview, either informally or on the record, Defendants' officers, employees, or agents, who may have their individual counsel present, regarding such matters.  The interviews are subject to the reasonable

convenience of the interviewee and without restraint or interference by Defendants.

B.      Upon written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, Defendants must submit written reports or responses to written interrogatories, under oath if requested, relating to any of the matters contained in this Final Judgment as may be requested.

C.      No information or documents obtained by the means provided in this section may be divulged by the Plaintiff to any person other than an authorized representative of the executive branch of the United States, except in the course of legal proceedings to which the United States is a party (including grand jury proceedings), or for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

D.      If, at the time a Defendant furnishes information or documents to Plaintiff, the Defendant represents and identifies in writing the material in any such information or documents to which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, and the Defendant marks each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," then the United States shall give 10 calendar days' notice before divulging that material in any legal proceeding (other than a grand jury proceeding) to which the Defendant is not a party.

## XI.      RETENTION OF JURISDICTION

This Court retains jurisdiction to enable any party to this Final Judgment to apply to this Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish any violations of its provisions.

## XII.    EXPIRATION OF FINAL JUDGMENT

Unless extended by this Court, this Final Judgment expires ten years from the date of its entry.

## XIII.    COSTS

Each party must bear its own costs of this action.

## XIV.    PUBLIC-INTEREST DETERMINATION

The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including making copies available to the public of this Final Judgment, the Competitive Impact Statement, and any public comments thereon and Plaintiff's responses to those comments.  Based upon the record before the Court, which includes the Competitive Impact Statement and any comments and responses to comments filed with the Court, entry of this Final Judgment is in the public interest.

Dated: February 2, 2015



_____
UNITED STATES DISTRICT JUDGE

IT IS SO ORDERED

Judge Vince Chhabria

FINAL JUDGMENT—Page 10
Case No. 3:14-cv-04949-VC